October 17, 1983

Hattie JOHNSON, Appellant,

vs.

Delphine DIXON and Audrey DIXON, Appellees.

Appeal heard November 24, 1980 before Chief Justice Nelson J. McCabe and Associate Justices Homer Bluehouse and Harry Brown.

Tom Tso, Esquire, of Window Rock, Navajo Nation (Arizona) appearing for the appellant, John Westerman, Esquire, of Farmington, New Mexico, appearing for the appellees and Micheal Taylor-Shaut, Esquire, of Window Rock, Navajo Nation (Arizona) appearing for DNA-People's Legal Services, Inc., as a friend of the court.

THE CASE BEFORE THE COURT

This case involves simple statutory construction, but the court is required to interpret a statute of great importance to individuals who reside within the Navajo Nation.

On March 12, 1979 a law suit involving Delphine Dixon and Audrey Dixon (the respondents here) against Hattie Johnson (the appellant here) commenced before a jury of six persons. The trial was held at Shiprock. On March 15, 1979 at 1:45 a.m. the jury reached its verdict in the case, and it awarded defendant Hattie Johnson damages in the sum of $15,000 for the infliction of emotional distress and punitive damages in the sum of $25,000 against Delphine Dixon, one of the plaintiffs. The verdict also gave Hattie Johnson $45,000 for alienation of affection and $15,000 punitive damages as against Delphine Dixon. It then went on to give Audrey Dixon $8,000 damages for assault and battery and $16,000 punitive damages against Hattie Johnson. Delphine recovered nothing for assault and battery.

The case was appealed by the plaintiffs, but the appeal was dismissed because it was not filed within the time provided by law.

The foundations for this appeal began on April 23, 1979 when Hattie Johnson filed a claim of exemption of property from any taking under a writ of execution. She filed claims based both upon New Mexico statutory exemptions and the Navajo exemption statute, 7 N.T.C. Sec. 711. On August 31, 1979 Hattie Johnson filed an amended claim of exemption, relying upon a liberal change in the New Mexico exemption statutes to include a homestead.

The order of the Honorable Perry Garnenez which is the subject

of this appeal indicated that New Mexico law could not be applied in support of exemptions under 7 N.T.C. Sec. 204 (which outlines the choice of law in civil actions in the Navajo Courts) because of the fact 7 N.T.C. Sec. 711 (our exemption statute) "specifically covers property subject to execution and property exempt from execution." The court allowed the exemption of livestock up to 75 sheep units and personal property up to $500 in value.

Hattie Johnson raises two issues on appeal:

"First, under 7 N.T.C. Sec. 711, should a Judgment Debtor be permitted to hold exempt from execution a homestead, a grazing permit, a land-use permit, a homesite lease, and the necessities for support of self and family";

"Second, if 7 N.T.C. Sec. 711 is deemed too imprecise to protect that property, should a Judgment Debtor be permitted to hold exempt from excution that property protected by the laws of her state of residency, in addition to that property specifically exempted by the Code."

We will address these issues in reverse order.

Prior to proceeding to the discussion of the issues, the Court will thank DNA-People's Legal Services, Inc. for appearing in this appeal as a friend of the court. The brief which DNA filed was excellent, and the articles which were appended to the brief were helpful. It is well-known that the library resources of the area are limited, and it is of great assistance to the Court to furnish it with articles which it otherwise would not have had access to. The excellent brief and the materials furnished have made DNA a friend of the court indeed.

## THE USE OF STATE LAW

There has been a great deal of argument that should our exemption statute prove to be too vague that state exemption statutes should be used to remedy that problem, and against that argument the law that a tribal enactment preempts state law has been raised. It is true that when an Indian Nation enters a field of legislation where there may be concurrent jurisdiction by a state, state jurisdiction is ousted and preempted, leaving exclusive tribal jurisdiction. See Fisher v. District Court, 424 U.S. 382 (1976); Biggs, "Trial Preemption," 54 Washington L. Rev. 633, 640-643 (1979). However this is not a preemption of state jurisdiction question as such, it is a situation in which our statute is to be interpreted.

7 N.T.C. Sec. 204 gives a sliding scale of laws to be applied in the Navajo Courts in civil action. The statute is:

> "(a) In all civil cases the Court of the Navajo Tribe shall apply any laws of the United States that may be applicable, any authorized regulations of the Interior Department, and any ordinances or customs of the Tribe, not prohibited by such Federal laws.
>
> (b) Where any doubt arises as to the customs or usages of the Tribe the court may request the advice of counsellors familiar with these customs and usages.

> (c) Any matters that are not covered by the traditional customs and usages of the Tribe, or by applicable Federal laws and regulations, shall be decided by the Court of the Navajo Tribe according to the laws of the state in which the matter in dispute may lie."

In construing the statute we use the obvious rule of construction that you are to read the statute as a whole and read what it says on its face. Subsection (a) states a mandatory preference for the law to be applied, and state law is not listed within that preference. Subsection (c) requires that only if there are any "matters that are not covered" by the laws listed in subsection (a) the application of state law will be mandatory.

7 N.T.C. Sec. 711 fits within the scheme of Chapter 5 of Title 7 outlining court procedure. It is placed with a number of statutes which deal with executing upon judgment, and it is clearly intended to "cover" the "matters" of property which is subject to execution and property which is exempt from execution. Therefore, since the Navajo Tribal Council has enacted a provision dealing with property in judgment executions, the District Court of the Shiprock District was correct in its ruling and it could not apply the state law the appellant urged upon it.

Given the fact that the Navajo Code has a provision for exemptions it would be highly ususual to use the state exemptions. It has long been recognized that federal courts need not, in diversity of citizenship cases, adhere to state procedural laws. Erie R. Co. v. Tompkins, 304 U.S. 64, 92 (1938). The Navajo judicial system, as is the federal judicial system, is an independent system for administering justice to those who come within its jurisdiction. That being the case, the Navajo Courts, as do federal court, follow Navajo policies as to how the Navajo Courts should be run. Byrd v. Blue Ridge Rural Electric Corporative, Inc., 356 U.S. 525 (1958). (We do not, as do the federal courts, consider the policy of providing substantially the same outcome as the state courts. Our policy is often to not provide the same outcome in order to protect Navajo interests and cultural values).

Our choice of law statute was enacted in 1959 at a time in which the Navajo Tribal Council was afraid of a state takeover. History shows that the Council chose a judicial system which mirrored state and federal court models in order to prevent a state assumption of jurisdiction. However the choice of law statute clearly expresses the intent that the Navajo Tribal Council wanted Navajo law to apply wherever possible. Otherwise why would the Navajo Courts have been created? The intent of the Council that we apply Navajo law, consisting of Navajo statutes, the common law (custom) and decisional law is plain, and in all cases the courts should carefully make certain that the matter is "not covered" by our law before considering or proceeding to the use of state law.

This is not to say that state law may not have its place. Our statutes are largely the product of Anglo-European legal thinking and drafting, and they are frequently based upon legislative models found in state and federal legislation. That being the case, state cases and similar statutes may be used in aid of interpretation of a Navajo statute. This is particularly the case where words of legal art are used in a statute. However that is a far different matter than actually applying state law.

LAND INTERESTS AS BEING EXEMPT FROM EXECUTION

That statute we are called upon to construe reads:

"(a) Except as provided in subsection (b) of this section, the following property only shall be subject to execution and all other property shall be exempt from executions:
(1) Livestock in excess of 75 sheep units, the debtor to have the right to select which animals not in access of 75 sheep units he wishes to keep, and any other personal property of the debtor in excess of the value of $500, the debtor to have the right to select which property not in excess of the value of $500 he wishes to keep.
(2) Any chattel legal title to which is in the plaintiff or upon which the plaintiff holds a lawful lien, provided the writ of execution specifies the chattel.
(b) The property declared exempt by subsection (a) of this section is not exempt from execution or sale in an auction brought or judgment recovered for the purchase price of the property so long as the property remains in the possession of the original purchaser."

This statute is not vague but quite easy to construe on its face. The Navajo Police may seize all livestock in excess of 75 sheep units and all personal property in excess of the value of $500. All other property (i.e. other than livestock or personal property) is exempt. What about land?

A grazing permit has been held to be an interest in land, and certainly the same principle would apply to a land-use permit and a homesite lease. Estate of Lee, 1 Navajo R. 27, 32 (1971); Estate of Nelson, 1 Navajo R. 162, 165 (1977). In the case Estate of Peshlakai, the Window Rock District Court considered Navajo land policy in ruling upon whether there could be adverse possession within the Navajo Nation. Opinion and Order, No. WR-CV-304-82 (December 30, 1982). In that case the Honorable Tom Tso ruled:

"This court is bound by the intent of the Navajo Tribal Council as expressed in its enacted laws, and reading the provisions of Chapter 5 of Title 3 pertaining to grazing permits it is clear that the Navajo Tribal Council did not intend that anyone but a permitee authorized by the Grazing Committee and the Superintendent should have a legal right to the use of lands. Since the lands are given to a particular person for his or her particular use and they cannot be in any way transferred or given without official permission, it is impossible to obtain an interest in Navajo land without fully complying with the statute. Estate of Nelson, 1 Navajo Rep. 162, 165 (1977)."

Judge Tso was correct, and he was correct in his discussions on the nature of Navajo land tenure. As a general principle, the Navajo Nation either holds direct title to lands or they are held in trust for the Navajo Nation by the United States. Although individual Navajo families or clans may occupy lands within the Navajo Nation, where the Navajo Nation has a scheme for allocating lands for individual use, our regulatory land scheme assumes that the individuals may not change or jeopardize the interests of the Navajo Nation in the land. This was known at the time the execution exemption statue was enacted, and from a reading of the statute it is clear that land was meant to be exempt. The individual has a leasehold or a use interest in the land, and interference with that interest would be interference with the Navajo Nation itself. Since Indian property and tribal property (i.e. land) cannot be lost under the legal doctrines of adverse possession, laches or delay, interests in such property in the nature of a use or lease-hold interest cannot be lost under an execution unless the statute clearly provides for it.

## NECESSITIES FOR SUPPORT OF SELF AND FAMILY

Wherever possible statutes should avoid stating fixed dollar amounts, because, as Montesquieu noted, "The value of money changes from a thousand causes, and the same denomination continues without the same thing." The Spirit of Laws, Bk. XXIX, Ch. 16.

Our statute does provide for "necessities for support of self and family," namely 75 sheep units and personal property of value of $500. Under Navajo common law, sheep were the basic necessity for support of self and family, and the Council obviously had that in mind by choosing the figure of 75 sheep units and $500 worth of personal (i.e. non-land) property. The difficulty is that outrageous inflation rates have existed since 1956, and 75 sheep units and $500 do not have the value they did then. We must hold this way because that is what the statute says, and we cannot go beyond the statute.

In the practice of state legislatures exemption statutes are often amended. Indeed some Western state constitutions require the legislature to enact liberal exemption laws as a constitutional provision in order to assure that exemption statutes reflect the current economic situation.

While our ruling may appear to be harsh, we have no jurisdiction to enlarge the provisions of this statute. It is up to the Navajo Tribal Council to make more liberal exemption provisions if it so chooses.

## DISPOSITION OF APPEAL

The order of the Shiprock District Court is affirmed and clarified in accordance with this opinion.